IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. QUINTELLA BOUNDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 3283 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| COUNTRY CLUB HILLS SCHOOL | ) | |
| DISTRICT 160, DR. TAMARA YOUNG, | ) | |
| in her individual capacity, JACQUELINE | ) | |
| DOSS, in her individual capacity, BARBARA | ) | |
| SWAIN, in her individual capacity, MICHAEL | ) | |
| T. HUMPHREY, in his individual capacity, | ) | |
| MARGO E. BROWN, in her individual | ) | |
| capacity, DORIS J. BLACKWELL, in her | ) | |
| individual capacity, SHARON MACK, in her | ) | |
| individual capacity, and DR. EARLINE | ) | |
| SCOTT, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Quintella Bounds, the former Director of Student Services for Country Club Hills School District 160 ("District"), brought this lawsuit asserting both a federal due process claim alleging a violation of her property interest in her ongoing employment in her position for the 2020-2021 school year and a state-law claim for intentional infliction of emotional distress related to her suspected Covid-19 illness while employed with the District. Defendants, the District and the individual board members serving during the events at issue, now move for summary judgment. For the reasons explained below, the Court grants the motion for summary judgment as to the federal claim and declines to exercise supplemental jurisdiction over the state-law claim.

**UNDISPUTED MATERIAL FACTS**

Because it affects the factual landscape, the Court begins with Defendants' motion to strike portions of both Plaintiff's responses to their statements of fact and the affidavits she includes in support of her opposition to their motion. (Defs.' Mot. Strike, ECF No. 110). Defendants' motion to strike is denied because such motions are disfavored, and Defendants were free to raise objections within their reply brief. LR 56.1(e)(2).

That said, the Court will not allow Plaintiff's conduct to go unremarked. The Court's standard practice for motions for summary judgment is to require adherence to the pertinent

Local Rules and to disregard statements of fact or any portions thereof that do not comply. *See* LR 56.1(d)(2). Plaintiff's factual statements and responses are deficient in several respects. First, in her responses to Defendants' statements of fact, she included arguments and additional facts not directly responsive to Defendants' factual statements and not set forth within her factual statement. (Pl.'s Am. Resp. Defs.' Rule 56.1 Stmt., ECF No. 103, at 3-14, ¶¶ 7, 8, 9, 17, 19, 21, 35, 38, 40, 44, 51.) Such responses are improper, *see* LR 56.1(d)(4), (e)(2), because Defendant lacks a "mechanism to 'reply' to the Plaintiff's responses and thereby dispute the contentions raised in the Plaintiff's responses." *Anderson v. Iacullo*, 963 F. Supp. 2d 818, 822 (N.D. Ill. 2013) (cleaned up). Second, Plaintiff's statement of additional facts variously includes arguments, lacks evidentiary support, overstates the cited evidence, and fails to narrow the citations sufficiently. (*See, e.g.*, Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶¶ 2, 3, 6, 11.) Third, Plaintiff's opposing brief references facts not contained within her statement of facts. (*See, e.g.*, Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J., ECF No. 100, at 5.) The Court's review of the motion was hampered by Plaintiff's inattention to the Local Rules and the details of her submissions, as set forth above and in additional notes below. In its discretion, the Court will consider the supported facts that are material to the due process analysis. Read as generously to Plaintiff as the supported record permits, the facts, undisputed unless noted, are as follows.

Plaintiff was hired as Director of Student Services for the District for the 2019-2020 school year. (Pl.'s Am. Resp. Defs.' Rule 56.1 Stmt., ECF No. 103, ¶¶ 1-2.) The parties do not identify the exact timeline in their factual statements, but the Court infers that the Board voted to hire Plaintiff in mid-April 2019, and Plaintiff and the Board (through its then-Superintendent Dr. Goodsell) later that month executed a written employment agreement, apparently backdated April 16, 2019, which "memorialized the terms of [Plaintiff's] employment." (*Id*. ¶ 9; *see also* Pl.'s Dep., ECF No. 92-1, at 10:16-19, 99:12-102:8.) Plaintiff indicates that there was some delay in the signing of the agreement because the original draft was missing a term, added after she brought the omission to the attention of "her supervisor"; in the meantime, she performed some unpaid duties for her new role, including reviewing staffing and providing opinions related to her department. (Pl.'s Am. Resp. Defs.' Rule 56.1 Stmt., ECF No. 103, ¶ 17; ECF No. 92-1, at 10:24-11:5, 12:1-7.) The final 2019-2020 employment agreement specified that Plaintiff was "hired and retained beginning July 1, 2019, for a period not to exceed June 30, 2020."[1] (Pl.'s Am. Resp. Defs.' 56.1 Stmt., ECF No. 103, ¶ 9.) It further stated that, unless "otherwise [] provided, no subsequent alteration, amendment, change, or addition to this Agreement shall be binding upon the parties unless reduced to writing and duly authorized and signed by each of them." (*Id*. ¶ 9.) The Board expressly "retain[ed] the right to repeal, change or modify any policies or regulations which it has adopted or may hereafter adopt, subject however, to restrictions contained in the Illinois School Code and other applicable law." (2019-2020 Emp. Agreement, ECF No. 92-4, at 5.)

As the 2019-2020 school year neared its close, Dr. Earline Scott, then the District Superintendent, met with Plaintiff in February 2020 to review her performance and informed Plaintiff that, though no salary increases were anticipated, Dr. Scott would recommend that

---

[1] Plaintiff repeatedly refers to the 2019-2020 employment agreement as a "purported" contract. As Plaintiff's claims do not involve her 2019-2020 employment, the Court need not resolve the contractual status document.

Plaintiff be rehired on the same terms as her 2019-2020 employment. (Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶ 12; Pl.'s Sur-Reply, ECF. No. 116, at 3-4.) Board meeting minutes from March 24, 2020 reflect that the Board "approved the Employment Agreements" for several school administrators, including Plaintiff, "for the period of July 1st, 2020, through June 30th, 2021." (Pl.'s Am. Resp. Defs.' Rule 56.1 Stmt., ECF No. 103, ¶ 34.) Dr. Scott emailed the pertinent administrators and indicated that each would need to sign and return a forthcoming employment agreement by March 31, 2020. (*Id*. ¶ 11.) Dr. Scott sent an employment agreement for the 2020-2021 school year to Plaintiff on March 25, 2020, with a reminder to sign and return it by March 31, 2020. (*Id*. ¶ 12.) Within minutes, Plaintiff emailed Dr. Scott regarding whether the vacation-day provision was correct, as it contained fewer days than the 2019-2020 agreement. (*Id*. ¶ 15.) Dr. Scott called Plaintiff to explain that she had recommended an unchanged number of vacation days to the Board; she surmised that the Board must have changed that term in Plaintiff's agreement and suggested that Plaintiff address that change with the Board. (*Id*.)

On March 25, 2020, Plaintiff became ill with suspected Covid-19 (a confirming diagnostic test was unavailable to her then). (*Id*. ¶¶ 22, 23.) She visited the emergency room late that night and was advised to quarantine for fourteen days; on her return to the emergency room on March 27, 2020, she was diagnosed with tonsillitis. (*Id*. ¶¶ 22, 23.) Plaintiff did not sign the proffered 2020-2021 agreement by March 31, 2020. (*Id*. ¶¶ 18, 31.) On April 1, 2020, Dr. Scott telephoned Plaintiff, who was still ill and quarantining at home, to follow up, and Plaintiff responded that she wanted her attorney to examine the contract. (*Id*. ¶ 47.) On April 2, 2020, Dr. Scott called again to inform Plaintiff that the Board had requested that Plaintiff's position be posted because she had not returned a signed employment agreement, and Plaintiff asked Dr. Scott to stop calling her at home.[2] (*Id*. ¶ 29; Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶ 26.) The Board also posted the position of another administrator who had not returned a signed contract by March 31, 2020. (Pl.'s Am. Resp. Defs.' Rule 56.1 Stmt., ECF No. 103, ¶¶ 49-50.) The Board mailed Plaintiff a letter indicating that it had posted her position because she had not returned the signed agreement by March 31, 2020. (*Id*. ¶¶ 29-30.)[3]

In April 2020, Plaintiff spoke with Dr. Adrienne Merritte, a Vice Principal at Southwood Elementary School in the District. (Pl.'s Aff., ECF No. 103-4, ¶ 5.) Dr. Merritte told Plaintiff that Dr. Merritt had worked the 2019-2020 school year without a contract and shared an anecdote related to her employment agreement for the 2020-2021 school year. (Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶ 7 (citing ECF No. 103-4).) Two other individuals, Dr. Donna Henry and

---

[2] The parties dispute some details of this conversation. The Court assumes for the purposes of this memorandum opinion and order that the call proceeded as Plaintiff represents it. (Pl.'s Stmt. Add'l Facts ¶ 26.)

[3] The parties devote multiple factual statements to events that occurred between approximately March 15, 2020, and early April 2020, including Plaintiff's requests to telework in the early days of Covid-19 (*see, e.g.*, Defs.' 56.1 Stmt., ECF No. 92, ¶¶ 32-34, 41-46; Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶¶ 16-17), Plaintiff's illness, and Plaintiff's communications with Dr. Scott and unwilling performance of some job duties while experiencing symptoms and quarantining, (Pl.'s Am. Resp. Defs. Rule 56.1 Stmt., ECF No. 103, ¶¶ 20, 22-28, 41-45; Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶¶ 18-27). As those facts do not figure into the Court's analysis, the Court does not include them here.

JoShandra Perry, began their employment with the District in a manner similar to Plaintiff—the Board voted to hire them, and they executed written employment agreements in the following weeks.[4]  (Pl.'s Stmt. Add'l Facts, ECF No. 103, ¶¶ 6, 8.)

On May 26, 2020, Plaintiff filed this lawsuit.  She has not been employed with the District since June 30, 2020.  She insists that the Defendants deprived her of a property interest in employment for the 2020-2021 school year, violating her due process rights, and that Defendants intentionally inflicted emotional distress related to her presumed Covid-19 illness in March 2020.  Defendants have moved for summary judgment on both claims, and the motion is fully briefed.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019).  The movant bears the initial burden of informing the Court why a trial is unnecessary.  *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  The Court construes evidence and reasonably drawn inferences in the light most favorable to the nonmovant.  *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014).  Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the Court that there is an absence of evidence to support the nonmovant's case.  *Modrowski*, 712 F.3d at 1168.  "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Id*. (internal quotation marks and vitiation omitted).  The nonmovant "must 'go beyond the pleadings' . . . to demonstrate that there is evidence 'upon which a jury could properly proceed to find a verdict' in her favor."  *Id*. at 1168-69 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986)).

---

[4] Although some of the statements in Plaintiff's supporting affidavits by Dr. Henry and Ms. Perry are phrased as hearsay, the Court generously assumes that the affiants could testify to the facts summarized above without resorting to hearsay and will consider those.  The Court agrees with Defendant, though, that the content of Plaintiff's affidavit regarding her conversation with Dr. Merritte constitutes entirely inadmissible hearsay—out-of-court statements of a non-party that Plaintiff seeks to use for their truth, Fed. R. Evid. 801(c).  *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (explaining that, although the nonmovant's "evidence need not be in an admissible *form*[,] . . . it must be admissible in *content*").  Plaintiff could not resolve that issue by testifying about her conversation with Dr. Merritte.  Given the content and timing of the conversation, which occurred after March 31, 2020, no hearsay exception is apparent either.  Fed. R. Evid. 803.  The Court typically does not consider such inadmissible hearsay at summary judgment.  *See Winskunas*, 23 F.3d at 1268 (explaining that a non-party's "out of court declaration to [plaintiff] is pure hearsay, admissible under none of the myriad exceptions to the hearsay rule and therefore incapable of creating a *genuine* issue of material fact").  The statements do not affect the result here, so the Court nevertheless includes them.

4

I. **Due Process Claim**

Plaintiff's basis for invoking the Court's original jurisdiction is her claim that Defendants violated her due process rights under 42 U.S.C. § 1983, so the Court begins there. Defendants assert that Plaintiff "cannot prove" her claims, in part because she cannot show a property interest in continued employment with the District due to her failure to return a signed employment agreement for the 2020-2021 school year. (Mem. Supp. Defs.' Mot. Summ. J., ECF No. 91, at 2-8.) Plaintiff contends that she had a property interest in employment with the District in the 2020-2021 school year following the Board vote and that the Board deprived her of that interest by "rescind[ing] her employment." (ECF No. 100, at 4-12.)

"To establish a due process claim, [a plaintiff] must demonstrate (1) that [s]he had a constitutionally protected property interest, (2) that [s]he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007).

Plaintiff's due process claim falters at "the threshold question [of] whether a protected property interest actually exists," *Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 904 (7th Cir. 2011), because she did not have a property interest in her position for the 2020-2021 school year. Neither "an 'abstract need or desire'" for the benefit nor "a 'unilateral expectation of it'" is sufficient. *Id*. (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *Davis v. City of Chi.*, 841 F.2d 186, 188-189 (7th Cir. 1988) ("[A] merely subjective and unilateral expectancy is *not* protected by due process."). Instead, "[a] person's interest in a benefit, such as continued employment, constitutes 'property' for due process purposes only if 'there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit.'" *Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010) (quoting *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996)).

State law "defines the property interest." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 494 (7th Cir. 2010). "Under Illinois law, a person has a property interest in his job where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement." *Covell*, 595 F.3d at 676. A legitimate claim of entitlement to employment may arise from "'a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him.'" *Id.* (quoting *Moss*, 473 F.3d at 700).

Plaintiff does not base her claimed property interest in any tenure in her position at the District (ECF No. 100, at 7); *see* 105 ILCS 5/24-11(d)(1)-(3) (providing circumstances under which tenure may be gained in a district), and she identifies no property interest stemming from any statute, regulation, or ordinance (ECF No. 100, at 1-6). Plaintiff also does not assert a general property interest in having her one-year contract for the 2019-2020 year renewed for the next school year. (*See id*.); *see also Halfhill v. Northeast Sch. Corp.*, 472 F.3d 496, 502 (7th Cir. 2006) (explaining that, where school district "did not dismiss [teacher] from his position" but instead "declined to renew his contract" after its end, teacher was not deprived of a property interest). Instead, she seems to assert a property interest stemming from either a contract or other understanding limiting the District's ability to decline to employ Plaintiff for the 2020-2021 school year.

5

### A. Contract as Basis for Claimed Property Interest

Plaintiff in her opposition affirmatively disclaims any property interest rooted in contract (ECF No. 100, at 4 ("Plaintiff *has never averred* that her property interest arises from an employment contract") (emphasis added); *id*. at 9 ("Plaintiff *does not assert* that her property right is based on a contract—express or implied[.]") (emphasis added); *see id*. at 4 ("The source of Plaintiff's present entitlement is the March 24, 2020, vote to hire her[.]")), but she makes inconsistent arguments within the Opposition and ultimately flipflops in her sur-reply, in which she argues that, by the foregoing language, she "merely intended to reject the contention that her due process claim was predicated on a formal written contract signed by the parties, or an implied contract based on their conduct."[5] (ECF. No. 116, at 3.) She now urges that her February 2020 performance review established an oral contract. (*Id*. at 4.)

Given the variations in Plaintiff's arguments, the Court first will address whether any written contract may be the source of Plaintiff's claimed property interest—the 2019-2020 employment agreement Plaintiff signed or the 2020-2021 agreement she did not sign. The 2019-2020 employment agreement's term ended on June 30, 2020, and it is undisputed that Plaintiff was employed with the District through that date. She does not claim and has not shown a property interest for employment for the 2020-2021 school year rooted in that agreement. *See Lyznicki v. Bd. of Educ., Sch. Dist. 167*, 707 F.2d 949, 951 (7th Cir. 1983) (holding that, because Illinois high-school principal on yearly contract "was not terminated till the end of the contract year," he "cannot base [a claimed right under state law] on contract").

It also is undisputed that Plaintiff never signed the 2020-2021 written employment agreement that was emailed to her after the Board vote. Defendants urge that the facts of this case are similar to (although the Court views them as less favorable to Plaintiff than) those of *Lyznicki*, in which the school board voted in February to renew the plaintiff administrator's contract, but, before he had signed a written contract for renewal, in June, changed its vote to reject the renewal of his contract. 707 F.2d at 951. The court explained that "if [the plaintiff] had signed a contract with the Board for the following year, and the Board had broken the contract, he would be able to complain of a deprivation of a property right under [Seventh Circuit case law]. But no contract was signed. There was at most an offer; there was no acceptance." *Id*.; *see also Coleman v. E. St. Louis Sch. Dist. No. 189*, No. 08-cv-0145-MJR, 2008 WL 4371302, at *1-6 (S.D. Ill. Sept. 19, 2008) (holding that, where school principals had handwritten different terms into the Board-issued employment contracts to conform with the superintendent's purported previous oral promises, and then signed and returned those contracts, the principals had issued counteroffers not accepted by the Board and "were not deprived of a constitutionally-protected property right or interest in their jobs as school principals" when the

---

[5] The Court is inclined to deem this argument waived under the circumstances, given Plaintiff's assertions against contract as the basis of any claimed property interest. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009) ("[T]he district court did not err by concluding that Trade Finance waived this alternative basis for its breach claims by raising it for the first time in its sur-reply during summary judgment proceedings."). In the end, though, as set forth below, it does not change the Court's conclusion.

6

Board deemed their employment agreements unsigned by them), *vacated on other grounds*, 2009 WL 2356682, at *2-3. Here, too, the Board voted to renew Plaintiff's employment, but, because she did not sign the proffered agreement to establish a written contract, the unsigned agreement does not itself provide a property interest in her employment for that year. She appears to agree. (*See* ECF No. 100, at 8 (acknowledging that "[t]he plaintiff in *Lyznicki* could not show [that a future year's] contract was formed because he never signed the contract")).

Instead, in her sur-reply, Plaintiff deems upon her February 2020 performance evaluation to have established a contract. According to Plaintiff, during that evaluation, Superintendent Scott said she would "recommend to the Board that Plaintiff be re-hired on terms identical to those in the 2019-2020 contract," and Plaintiff "agreed to accept the same salary, benefits as she had under [that] contract." (ECF No. 116, at 3-4.) Plaintiff asserts that Board Policy 3:50, which she mentions for the first time in her sur-reply, gave Superintendent Scott "the capacity to . . . negotiate the terms of [Plaintiff's] employment for the following year." (*Id*. at 4.) She urges that the foregoing satisfies "all the elements for a valid, enforceable oral contract under Illinois law."[6] (*Id*.)

The Court disagrees that the evaluation demonstrates any property interest in employment for the 2020-2021 school year. Plaintiff indicates that Dr. Scott "told [her] that [Dr. Scott] would *recommend* to the Board that Plaintiff be re-hired on terms identical to those in the 2019-2020 contract." (*Id*. at 3 (emphasis added).) A performance evaluation ending with the evaluator expressing an intention to recommend contract renewal, though, does not, without more, transform the evaluation "into an unalterable right" for that result. *Halfhill*, 472 F.3d at 502. Thus, Dr. Scott's recommendation that the Board employ her on particular terms was insufficient to give Plaintiff a property interest in such employment.

Moreover, in arguing that Dr. Scott had the power to bind the District to particular terms of employment in an evaluation, Plaintiff baldly overstates the language in Board Policy 3:50, which provides that a Superintendent "shall evaluate all administrative personnel and make employment and salary *recommendations* to the Board," and "*[t]he Board and each administrator* shall enter into an employment agreement that complies with Board policy and State law." (Ex. 1 to Pl.'s Sur-Reply, ECF No. 116-1, at 1 (emphases added).) Contrary to Plaintiff's characterization, this language does not even arguably confer upon Dr. Scott the power to conclusively negotiate and bind the District to terms of Plaintiff's employment and thus does not support a potential property interest in employment for the 2020-2021 school year. *See Tranchita v. Callahan*, 511 F. Supp. 3d 850, 877 (N.D. Ill. 2021) ("A 'mutually explicit understanding' that constitutes a property interest, however, 'cannot be based on the representation of government officials who are not authorized to make such representation.'") (citing *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1334 (7th Cir. 1989)); *Coleman*, 2008 WL

---

[6] For the purposes of this memorandum opinion and order, the Court assumes, without deciding, that written contracts are unnecessary to comply with Illinois law. *See* 105 ILCS 5/10-23.8a; *Bd. of Educ. v. Teachers' Ret. Sys.*, 984 N.E.2d 66, 72 (Ill. App. Ct. 2013) (explaining that § 10-23.8a could "create a contract by law" and that "[t]he administrators in question had one-year contracts pursuant to [that section] regardless of whether they entered into a written contract with the District").

7

4371302, at *4, 6 (explaining that superintendent's alleged salary announcement and offer of particular school assignments did not show an enforceable "meeting of the minds" because the superintendent could not make such representations on behalf of the district).

### B. Mutual Understanding Regarding Employment for the 2020-2021 School Year as Basis for Claimed Property Interest

Plaintiff's last resort, therefore, is to show a property interest from "an expectation . . . that was legally enforceable, a mutually binding obligation.'" *Tranchita*, 511 F. Supp. 3d at 877 (quoting *Common v. Williams*, 859 F.2d 467, 470 (7th Cir. 1988)). She "bears the burden of demonstrating the existence of a mutually explicit understanding." *Id*. (citing *Crull v. Sunderman*, 384 F.3d 453, 464-65 (7th Cir. 2004)).

In her opposition, Plaintiff identifies "[t]he source of [her] present entitlement [a]s the March 24, 2020 [Board] vote." (ECF No. 100, at 4.) She asserts that, because that Board vote preceded any written contract, the vote was "all that was required" to give her a property interest in employment for the 2020-2021 school year. (*Id*. at 5, 9.) The Board, however, explicitly voted to accept "employment agreements," not "employment," as Plaintiff represents, and the Board then sought signed written agreements. The language of the Board vote thus does not indicate a "mutual understanding" that "all that was required" to guarantee renewal of employment for a future school year was a Board vote.

Plaintiff also, less clearly, suggests that Board practices gave her a property interest in employment through the 2020-2021 school year. The argument strains credulity and lacks evidentiary support. First, Plaintiff was employed for less than a year, without any previous contract renewals with the District, making any purported knowledge of or reliance upon contract renewal practices dubious at best. *See Perry v. Sindermann*, 408 U.S. 593, 602 (1972) ("A teacher . . . *who has held his position for a number of years*, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure.") (emphasis added). Second, in her sur-reply, Plaintiff acknowledges Board Policy 3:50, which unambiguously provides that "[t]he Board and each administrator shall enter into an employment agreement" (ECF No. 116-1, at 1); her insistence that vaguely-described unwritten practices, such as "consider[ing] an employee hired once approved by the Board" or "tabling contracts or approving them on a contingency basis when they were not prepared to approve a contract" (ECF No. 100, at 5, 8), could have given her a differing belief, too, is implausible.

Even overlooking these uncertainties, Plaintiff's reliance on "practices" is misplaced. The Seventh Circuit has emphasized that "[p]ast practices of an employer are not sufficient to establish a mutual understanding." *Crull*, 384 F.3d at 468 (citations omitted); *see also Hermes v. Hein*, 742 F.2d 350, 355 (7th Cir. 1984) ("[A] common law of employment is established through rules or mutually explicit understandings and not solely through the past practices of an employer."). Thus, any prior Board practices, including the two nebulous practices identified above or any practice as to timelines for the return of signed employment agreements, are insufficient to demonstrate any mutual understanding as to the practices or Plaintiff's employment for the upcoming year.

Plaintiff simply has not provided evidence sufficient to create a fact question as to whether the parties had a mutual understanding as to her employment for the 2020-2021 school year. She chiefly relies upon anecdotes regarding the timing of the Board votes and written agreements for new hires in the District, including Plaintiff's hiring. The circumstances regarding new-hire employees, though, do not denote practices, much less mutually explicit understandings, as to the renewal of contracts of administrators already working under an existing contract for a prior school year. Collectively, Plaintiff's narratives suggest that the Board vote regarding employment typically precedes a written agreement; this not only makes sense but is a far cry from indicating a mutual understanding that no signed written agreement was required at all, particularly where, as here, after the Board vote regarding "employment agreements," every exchange reiterated the message that Plaintiff needed to sign and return an employment agreement by March 31, 2020. This also was consistent with the written Board Policy 3:50. Plaintiff does not show a mutual understanding that the Board vote had sealed the deal for her employment in the 2020-2021 school year in the face of clear and consistent communications from the Board to the contrary. *See Tranchita*, 511 F. Supp. 3d at 878 (finding that, even if the parties had a contrary prior mutual understanding, "it is unlikely that Tranchita can show that *both* she and the IDNR" shared an understanding in 2020 that her interpretation of permit requirements was correct when the agency had communicated its contrary understanding of permit requirements to her).

Even taking together Board Policy 3:50, the circumstances of Plaintiff's initial hiring and signing the 2019-2020 written agreement, anecdotal evidence of the hiring of other District administrators, Plaintiff's February 2020 performance review, the Board vote of March 24, 2020, and the related communications, the Court concludes that this evidence does not rise to the level of demonstrating a mutually explicit understanding between her and the District that the Board vote "was all that was required" to renew her employment for the 2020-2021 school year so as to give her a property interest in continued employment. *See Border*, 75 F.3d at 274-76 (holding that combination of employee handbook, employer practices as to employee termination, and oral statements of supervisors were "inadequate collectively" to show "clear promise" of continued employment absent just cause for dismissal); *Hermes*, 742 F.2d at 355 (holding that "the record [did not] reflect[] a rule or mutually explicit understanding sufficient to establish a due process property interest"); *Parker v. Macon Cty. Soil & Water Conservation Dist.*, Nos. 09-2163, 08-2175, 2010 WL 2697141, at *7 (C.D. Ill. July 7, 2010) (holding that, although two employees indicated that they knew of no instance in which an employee's contract was not renewed, plaintiff had not provided evidence of "a property right to continued employment arising out of local custom or usage").

Perhaps Plaintiff unilaterally believed her employment was secure after the Board vote, but that belief would not bind the District because "[a] misunderstanding of one's entitlements, even if reasonable, does not enlarge those entitlements." *Wolf*, 870 F.2d at 1335 (internal quotation marks and citations omitted). Nor was Plaintiff's conduct at all consistent with such a belief, as she signed a written agreement for the 2019-2020 school year and questioned, based upon the language of that 2019-2020 written agreement, the terms presented in the proposed written agreement for the 2020-2021 school year. *See Parker*, 2010 WL 2697141, at *8 ("[T]he conduct of Plaintiffs and the District during the time in question suggests no mutual understanding.").

9

Finally, although the parties debate contract formation, the semantics of related jargon, and the requirements of the Illinois School Code, and Plaintiff refers to the requirements of the Illinois Open Meetings Act and offers excuses for her failure to sign and return the 2020-2021 employment agreement by March 31, 2020, those matters are not material to the issue of whether Plaintiff had a property interest in her employment for the 2020-2021 school year for the purposes of her federal due process claim. The Court accordingly declines to address them.

No reasonable jury could find that Plaintiff had a property interest in employment (on any terms) for the 2020-2021 school year.[7] *See Lyznicki*, 707 F.2d at 951 (holding that plaintiff was not deprived of any property interest when the board voted to renew his employment but months later reversed its vote, as plaintiff had not signed a contract for renewal); *Halfhill*, 472 F.3d at 502 ("[N]o reasonable jury could find that Halfhill and Northeast had a mutual understanding that Northeast would renew Halfhill's contract."); *Crull*, 384 F.3d at 468 ("Because it is the plaintiff's burden to show mutually explicit understanding or common law of workplace that establishes a property interest, and because, viewing the facts in the light most favorable to [plaintiff], she has not met this burden, we must conclude that [plaintiff] did not have a property interest in her continued employment."). She thus was not owed the process she would have liked to have had (notice and a hearing) as to the 2020-2021 school year. *See Parker*, 2010 WL 2697141, at * 8 ("This court ultimately agrees with Defendants' contention that Plaintiffs lacked a constitutionally protected property interest in continued employment, and thus no hearing was constitutionally owed to them upon the District's decision to decline contract renewal.").

## II. Plaintiff's IIED Claim

The Court has granted summary judgment in favor of Defendants on Plaintiff's federal claim, and the parties are not claimed to be diverse. (ECF No. 1.) All that remains is Plaintiff's IIED claim under Illinois law. "The general rule, when the federal claims fall out before trial, is that the district court should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters of purely state law." *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). The Court does not see any reason to continue exercising jurisdiction over Plaintiff's state-law claims. After having considered the factors of "judicial economy, convenience, fairness, and comity," *id*., and finding no applicable exceptions to the

---

[7] For similar reasons, Plaintiff also did not suffer any "deprivation" attributable to Defendants. On March 24, 2020, the Board voted to approve an employment agreement for Plaintiff for the 2020-2021 school year; that agreement was sent to Plaintiff with clear instructions regarding what she must do—sign and return it by March 31, 2020. Although Plaintiff characterizes the Board's posting of her position when she failed to sign and return the contract as the Board "rescind[ing]" "arbitrarily" an offer of employment, without more, the Board did not offend the Constitution by enforcing a deadline (or even withdrawing an offer that was not accepted). *Lyznicki*, 707 F.2d at 951; *see Tsay v. Dep't of Navy*, 120 F. App'x 823, 825 (Fed. Cir. 2005) (explaining in context of legal brief received after merit board deadline, that "[d]ue process is not violated by enforcing deadlines") (citation omitted); *Sierzega v. Ashcroft*, 358 F. Supp. 2d 3, 5 (D.D.C. 2005) ("[E]ven if Ms. Sierzega had established a liberty interest in her employment, the FBI, by withdrawing her conditional offer, did not deprive her of that interest.").

general rule, *see Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-14 (7th Cir. 2012); 735 ILCS 5/13-217, the Court in its discretion declines to exercise supplemental jurisdiction over the IIED claim. Plaintiff's IIED claim is dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011) (when a district court declines to exercise supplemental jurisdiction over state-law claims, the proper course is to dismiss them without prejudice).

## CONCLUSION

Defendants' motion to strike [110] is denied. Defendants' motion for summary judgment [90] is granted as to Plaintiff's federal due process claim. Judgment shall be entered in favor of Defendants as to that claim. The Court relinquishes jurisdiction over Plaintiff's state-law claim and thus dismissed it without prejudice. Any future dates or schedules are stricken as moot. Civil case terminated.

**DATE:** May 11, 2022

**Hon. Ronald A. Guzmán**
**United States District Judge**